UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**LESTER RIGGINS**                                                    **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO. 5:21-CV-P104-TBR**

**CHRISTIAN COUNTY, KENTUCKY et al.**                             **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff, Lester Riggins, initiated this 42 U.S.C. § 1983 action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, some of Plaintiff's claims will be dismissed, and others will be allowed to proceed.

### I. STATEMENT OF CLAIMS

Plaintiff, a pretrial detainee, was incarcerated at the Christian County Jail (CCJ) when he filed his complaint. He names as Defendants Christian County, Kentucky; Christian County Fiscal Court; Advance Correctional Healthcare (ACH); and in their official capacities CCJ Colonel Steve Howard, CCJ Jailer Brad Boyd, CCJ Captain Wesley Campbell, CCJ Lt. Caleb Hargrove, Deputy Matthew Wynee, ACH mental health professional "Miss Bonnie", ACH Nurse Linzy Palmer, and "Executive Judge" Steve Tribble. Plaintiff brings claims under Title II of the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), Title II of the Civil Rights Act (CRA) of 1964, several constitutional amendments, and Kentucky state law.

Plaintiff states that he is a 52-year-old African American man who is paralyzed in both legs. He explains that he needs a wheelchair, walker, or cane to walk, but that his primary mode of mobility is by wheelchair or walker.

According to the complaint, on September 30, 2020, Plaintiff's cane was taken from him and he was placed in a disciplinary isolation cell ("the hole") after he was involved in an altercation with another inmate. He states that during the first fourteen days, he was deprived of bedding which required him to sleep on a cold steel bunk "in an extremely cold, dark and dismal cell." He alleges that because he is asthmatic and paralyzed this treatment violated the Title II of the ADA, RA, Title II of the CRA, the Eighth Amendment, and the Fourteenth Amendment's due process and equal protection clauses.

Plaintiff alleges that his grievances regarding this treatment were ignored and unanswered in violation of his First and Fourteenth Amendment rights.

Plaintiff also alleges that he was kept in isolation for ten months on lock down for twenty-three hours a day, during which time he was denied privileges enjoyed by other inmates, such as hot water and adequate access to the phone system or video communication.[1] He states that before his incarceration he was diagnosed with PTSD and bi-polar disorder and that he is currently experiencing hallucinations and delusional tendencies. He alleges that during his time in isolation, Defendants Miss Bonnie and Palmer were not concerned with his mental health during the lock down. He asserts that he submitted numerous medical slips which were unanswered or ignored.

Plaintiff next alleges that Deputy Wayne was not trained properly by Defendants Burd and Campbell and harassed him by calling him a "'Black cripple'" and 'the cripple Black dude'" thereby violating his rights under ADA, the RA, state law, and the Fourteenth Amendment's

---

[1] Plaintiff's complaint sometimes refers to his period in isolation as lasting seven, rather than ten, months. The Court will refer to his time in isolation as ten moths because that time-period appears more often in the complaint. Additionally, for purposes of initial review, the Court would not change its analysis based on the three-month difference between the two.

equal protection clause. He further alleges that his Sixth Amendment right was violated because he had only limited telephone/video access while he was in isolation.

As relief, Plaintiff asks for monetary and punitive damages.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Defendants

Plaintiff names as Defendants Christian County; the Christian County Fiscal Court and its Judge Executive in his official capacity; ACH, a private entity providing healthcare at CCJ; several employees of CCJ in their official capacities; and two ACH employees in their official capacities. As set forth below, the real Defendants here are Christian County and ACH.

In making claims against the Christian County Fiscal Court and its Judge Executive in his official capacity, it is Christian County that is the proper defendant. *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson

County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself).

And, naming employees of employees of a county jail in their official capacities is the same as naming the county itself, in this case Christian County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Suing employees of ACH in their official capacities is the same as suing the entity for which they work, *i.e.*, ACH. *See, e.g.*, *Watson v. S. Health Partners*, No. 3:18CV-P233-JHM, 2018 WL 4775507, at *2 (W.D. Ky. Oct. 3, 2018).

Finally, "[t]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity." *Mitchell v. Horton*, No. 2:18-CV-216, 2019 WL 1025562, at *5 (W.D. Mich. Mar. 4, 2019) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002)).

Thus, the Court considers the real Defendants in this case to be Christian County and ACH.

### B. Claims for injunctive and punitive relief

Plaintiff is no longer incarcerated at CCJ. Since filing this suit, Plaintiff has been transferred to another facility. Therefore, Plaintiff's request for injunctive relief is moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("[T]o the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail."); *see also Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.").

Additionally, under § 1983 Plaintiff cannot "recover punitive damages from Christian County or Defendants in their official capacities." *Pernestti v. Boyd*, No. 5:18-CV-P121-TBR,

2019 WL 321419, at *5 (W.D. Ky. Jan. 24, 2019). And, neither the RA nor Title II of the ADA authorizes punitive damages. *Meeks v. Schofield*, No. 3:12-MC-00035, 2012 WL 1934416, at *3 (M.D. Tenn. May 29, 2012) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)).

### C. Claims related to grievances

Plaintiff alleges that his grievances regarding his treatment were ignored and unanswered violating his First and Fourteenth Amendment rights.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure."); *LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"). Further, if the prison provides a grievance process, violations of its procedures or its ineffectiveness do not rise to the level of a federal constitutional right. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("[T]there is no constitutionally protected due process right to unfettered access to prison grievance procedures.").

Accordingly, Plaintiff's claim regarding his unanswered grievances will be dismissed for failure to state a claim upon which relief may be granted.

### D. Sixth Amendment claim

Plaintiff alleges that due to being in isolation for ten months he "did not have access to the phone system or tablet for video communication to his family or attorney." Riggins had to

5

rely on the deputies "who may feel not to let Riggins have access, only when they wanted even though Riggins show no aggressive behavior or attitude."

Plaintiff fails to state a Sixth Amendment claim because he was not allowed to use the phone/video communication system or only allowed to use it when deputies wanted him to use because he does not allege that he did not have other means of contact with his attorney. *See, e.g.*, *Jackson v. Coyn*, No. 3:17-cv-P61-DJH, 2017 WL 2389400, at *4 (W.D. Ky. June 1, 2017) (finding that, where a plaintiff does not allege that he was not allowed to contact his lawyer by other methods, such as letters and visits, he fails to state a constitutional violation based on a telephone restriction); *Thompson v. Causey*, No. 1:17-cv-P12-GNS, 2017 WL 1398345, at *2 (W.D. Ky. Apr. 8, 2017) (same); *Saunders v. Dickerson*, No. 1:07cv1094(LMB/BRP), 2008 WL 2543428, at *4 (E.D. Va. June 25, 2008) (pretrial detainee whose telephone privileges were suspended while in administrative segregation failed to state a Sixth Amendment claim; detainee could have written to attorney and had personal visits with him, and detainee did not show that alleged denial of access resulted in unfair prejudice).

### *E. Section 1983 verbal abuse claim*

Plaintiff alleges that Defendant Wynee verbally abused him by intentionally referring to him as "'the Black cripple'" and 'cripple'" causing mental and emotional distress. However, verbal abuse and harassment, even the use of racial slurs, "'although unprofessional and reprehensible, does not rise to the level of constitutional magnitude.'" *Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (quoting *Corsetti v. Tessmer*, 41 F. App'x 753, 755-56 (6th Cir. 2002)); *Ivey v. Wilson*, 832 F.2d 950, 956 (6th Cir. 1987) (per curiam). Therefore, Plaintiff fails to state a § 1983 claim based on the alleged verbal abuse.

### F. Title II of the CRA

The complaint does not establish a plausible claim under Title II of the CRA, 42 U.S.C. §§ 2000a-2000a-6, because damages are not an available remedy under Title II. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) ("When a plaintiff brings an action under that Title, he cannot recover damages.") (per curiam); *Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 241 (6th Cir. 1990) (finding that "Title II only permits the issuance of an injunction and declaratory relief." As already discussed, Plaintiff cannot seek injunctive or declaratory relief because he is no longer incarcerated at the CCJ.

### G. Fourteenth Amendment equal-protection claim

Plaintiff alleges that he was treated disparately and discriminatorily when Defendants denied him essential bedding and kept him in isolation for ten months, twenty-three hours a day with no medical or mental treatment. He further alleges that "Defendants have subjected other individual[s] of a protected class besides himself to 14th Amendment equal protection clause violation as a result of improper training, supervision, and control."

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is "in essence 'a direction that all persons similarly situated should be treated alike.'" *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Thus, the threshold element of an equal-protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Plaintiffs must allege that the government treated them disparately as compared to "similarly situated persons." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.

2011); *see also Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (explaining that plaintiff must be similarly situated to his comparators "in all relevant respects") (internal quotation marks and citation omitted). "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). Thus, Plaintiff adequately states an equal protection claim if he alleges that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment "is the result of intentional and purposeful discrimination." *Robinson*, 615 F. App'x at 314-15.

Here, Plaintiff does not contend that he was treated differently than other inmates because of his race or his disability. In fact, he indicates that "other individual[s] of a protected class besides himself" were subject to discriminatory treatment in violation of the Equal Protection Claus.

Furthermore, even if Plaintiff had alleged that he was treated differently than other Black and/or handicapped detainees, he provides no information about any comparators. Plaintiff has not pled any specific factual allegations supporting a plausible inference of discrimination. He sets forth no specific assertions as to how he was treated differently than other non-Black and/or handicapped detainees who wanted bed linens while in the hole, and mentions no specific policy that is not applied equally to Black and/or handicapped inmates regarding bed linens—or anything else, for that matter. For example, Plaintiff does not allege that favoritism was shown to non-Black inmates being kept in the hole. Thus, while Plaintiff claims that he is a member of a constitutionally protected class and that Defendants' failure to allow him bed linens or to check on his mental status is due to a policy at CCJ, he has not alleged that Defendants "intentionally

discriminated against him because of his membership in that protected class." *McGaughy v. Johnson*, 63 F. App'x 177, 178 (6th Cir. 2003). Consequently, the Court finds that Plaintiff fails to state a colorable equal-protection claim under the Fourteenth Amendment.

### *H. State law battery claim*

Plaintiff alleges that the CCJ Defendants committed battery by subjecting him, a disabled person, to cruel and malicious treatment by confiscating his bedding and acting in a rude and angry manner, thereby causing him physical, mental, and emotional harm.

In Kentucky, "'[b]attery is any unlawful touching of the person of another, either by the aggressor, or by any substance set in motion by him.'" *Buckner v. Bryant*, No. CIV.A. 3:10-36-DCR, 2013 WL 1220703, at *3 (E.D. Ky. Mar. 25, 2013) (quoting *Andrew v. Begley,* 203 S.W.3d 165, 171 (Ky. Ct. App. 2006)). "Although Kentucky case law defines common law civil battery simply as 'any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him,' intent is an essential element." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (internal footnotes omitted)

Here, Plaintiff does not allege that he was touched either by a named Defendant or by any substance set in motion by any named Defendant. He, instead, alleges the absence of bed linens and the use of rude and angry words. His state law battery claim must be dismissed.

### *I. ADA and RA claims*

Plaintiff alleges that his rights under Title II of the ADA and Section 504 of the RA were violated by confining him, a qualified individual with disabilities, in an isolation cell without bedding or his cane and denying him any "mental-medical care" while in isolation for a period of months, twenty-three hours per day. He asserts that Defendants intentionally discriminated

against him and could have reasonably accommodated him by "providing him with the treatment required."

It is well established that "the ADA and the Rehabilitation Act apply to prisoners." *Key v. Grayson*, 179 F.3d 996, 997 (6th Cir. 1999) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212–13 (1998)).  Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Similarly, § 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).[2]  A prisoner also may maintain a claim for failure by prison officials to provide reasonable accommodations (in addition to claims for intentional discrimination on the basis of disability) under Title II of the ADA and § 504 of the RA.  *See Anderson v. City of Blue Ash*, 798 F.3d 338, 353 (6th Cir. 2015); *Larson v. Eppinger*, No. 2:20-CV-4997, 2021 WL 2659998, at *6 (S.D. Ohio June 29, 2021).

The Court finds that Plaintiff has alleged sufficient facts to state a claim for violation of the ADA and RA based on CCJ's alleged intentional discrimination and alleged failure to provide him with reasonable accommodations for his physical and mental handicaps.

However, Plaintiff fails to state an ADA/RA claim against ACH.  "'[A] private corporation is not a public entity merely because it contracts with a public entity to provide some service.'" *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (determining that Corizon Health and its employees were not public entities under the ADA) (quoting *Edison*

---

[2] "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cty.*, 219 F.3d 555, 557, n.3 (6th Cir. 2000).

*v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); *see Watson v. Michigan*, No. 18-CV-10518, 2018 WL 2194225, at *2 (E.D. Mich. May 14, 2018) (concluding that a private health provider that contracted with a state prison was not a public entity under the RA); *Thompson v. Mich. Dep't of Corr.*, No. 17-10490, 2018 WL 5094078, at *2 (E.D. Mich. Aug. 10, 2018) (concluding that a private health provider that contracted with a state prison was not a "public entity" under the ADA). The Court therefore will dismiss Plaintiff's ADA/RA claim against Defendant ACH.

### *J. State-law medical malpractice claim*

Plaintiff alleges "state law medical indifference" because Defendants Miss Bonnie and Nurse Palmer did not uphold their duty of reasonable care regarding his mental disorders. This appears to be medical malpractice claim against these Defendants, which is really a claim against ACH because they are named in their official capacities only. The Court will allow this claim to continue.

### *K. Eighth Amendment/Fourteenth Amendment due-process claims*

While the Eighth Amendment provides a convicted prisoner the right to be free from cruel and unusual punishment, it is the Due Process Clause of the Fourteenth Amendment that provides the same protections to pretrial detainees. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016)). Upon review, the Court will allow Plaintiff's deliberate indifference claim related to being kept in isolation with no bed linens or cane and with no checks on his medical and mental health during the months that he was kept in his isolation cell twenty-three hours per day. These claims will go forward under the Fourteenth Amendment against Christian County and ACH. Additionally, the Court will allow Plaintiff's claim against Christian County and ACH related to failure to train employees.

## III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that the following claims are **DISMISSED** for failure to state a claim for relief pursuant to 28 U.S.C. § 1915A(b)(1):  (1) 42 U.S.C. § 1983 claims related to grievances, the Sixth Amendment, verbal abuse, and equal protection; (2) claims for injunctive relief and punitive damages; (3) claims under Title II of the Civil Rights Act; (4) claims under ADA/RA claims against ACH; and (5) the state-law battery claim.

The Court will enter a separate Order Regarding Service and Scheduling Order to govern the claims going forward, *i.e.*, ADA/RA claims against Christian County; medical malpractice claim against ACH; and Fourteenth Amendment claims against Christian County and ACH.

Date: January 4, 2022

                                                                             **Thomas B. Russell, Senior Judge**
                                                                              **United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
        Christian County Attorney
4413.009