UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF  KENTUCKY
PADUCAH DIVISION

LESTER RIGGINS                                                             PLAINTIFF

v.                                              CIVIL ACTION NO. 5:21-CV-P104-JHM

CHRISTIAN COUNTY, KENTUCKY et al.                          DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is the motion for summary judgment filed by the Advance Correctional Healthcare (ACH) Defendants: ACH and Lindsay Palm  (DN 152).  *Pro se* Plaintiff Lester Riggins has responded (DN 161).  The matter being ripe, the Court will grant the motion as set forth below.

**I.**

The issues in this litigation arise from Plaintiff's detention as a pretrial detainee at the Christian County Jail (CCJ).  On initial review under 28 U.S.C. § 1915A (DNs 12 and 46) of the complaint (DN 1) and amended complaint[1] (DN 55), the Court allowed the following claims to go forward: (1) Plaintiff's claims of Fourteenth Amendment deliberate-indifference to his mental and physical health against Defendants Miss Bonnie[2] and Palm; (2) Plaintiff's state-law medical malpractice claim against Defendants ACH, Miss Bonnie, and Palm; and (3) Plaintiff's claim against ACH related to its failure to train employees.

The undisputed facts in this litigation are as follows.  Plaintiff was a pretrial detainee at the CCJ from September 2020 until August 2021. DN 1,  PageID # 9; DN 161, PageID # 2700; DN 150-3.  He is paralyzed in both legs and uses a wheelchair, walker, or cane.  DN 1, PageID # 9; DN 150-3.  He filled out an intake form when he entered the CCJ. DN 161, PageID # 2597;

---

[1] The amended complaint only added that Defendants were named in their individual capacity.

[2] Miss Bonnie has not been served.

DN 150-3, PageID # 2596.  He was initially housed in the medical cell and was allowed to keep his cane.  DN 1, PageID # 9; DN 161, PageID # 2700; DN 150-3, PageID # 2597.  However, within a few weeks, Plaintiff assaulted another inmate with his cane and was charged with and pleaded guilty to assault under extreme emotional disturbance.  DN 138, PageID # 2435; DN 150-3, PageID # 2597.

Because of the assault, Plaintiff was placed in disciplinary segregation for 14 days. DN 140, PageID # 2457; DN 150-3, PageID # 2597.  During that time, his bedding was removed for at least 16 hours during the day and evening hours, and his cane was confiscated.  DN 140, PageID # 2455; DN 150-3, PageID # 2597-98.  He was kept in non-disciplinary isolation for all or most of the approximately ten months he remained at the CCJ.  DN 140, PageID # 2457; DN 150-3, PageID # 2598-99.  While in isolation, Plaintiff was only allowed out of his cell one hour each day. [3]  DN 1, PageID # 12.  He was not provided any mental health treatment during his stay at the CCJ.  DN 140, PageID # 2473; DN 152-1, PageID # 2419-20.  The CCJ has a grievance policy and a policy under which inmates may make written requests for medical or mental health treatment.  DN 1, PageID # 11-12; DN 150-3, PageID # 2594-95; DN 150-3, PageID # 2598.

Facts remaining in dispute are whether Plaintiff filed any grievance other than one related to the removal of his bedding; whether Plaintiff's bedding was removed from his cell for 24 hours per day while he was housed in disciplinary segregation (or for only 16 hours); whether Plaintiff suffered from any mental health issues while housed at the CCJ; if he did, whether Plaintiff ever made that known to Defendants; and whether he ever asked for mental health treatment.

---

[3] Defendants do not contradict this allegation, and the Court considers it undisputed.

# II.

## A. Summary judgment standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge its burden by demonstrating the absence of evidence to support an essential element of the nonmoving party's case. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).

## B. The ACH Defendants' motion for summary judgment

The ACH Defendants move for summary judgment arguing that Plaintiff failed to satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement; has no proof that he suffered a physical injury; and has not provided any admissible evidence indicating that he

suffered from any mental illness, much less a mental illness constituting a serious medical condition.  They further argue as to his Fourteenth Amendment deliberate-indifference claim that Plaintiff has failed to disclose any experts and has failed to provide any evidence that Defendant Palm acted with deliberate indifference or failed to provide him with medical treatment when sick-call requests were submitted and received by the medical department.  They also argue that Plaintiff fails to offer sufficient support for his medical malpractice claim.  They further contend that he has failed to demonstrate that any ACH practices or policies resulted in the violation of his constitutional rights.

### 1. Explanation as to which filings the Court considers herein

In addition to the complaint, the amended complaint, the motion for summary judgment filed by the ACH Defendants, and the response filed by Plaintiff, the Court considers the following documents.

In support of their summary-judgment motion, the ACH Defendants refer to "Exhibit A" of DN 31, which they state "constitutes excerpts of Plaintiff's Inmate File produced by the Christian County defendants at DN 31."  DN 152-1, PageID # 2611.  There is no Exhibit A attached to DN 31 in the Court's docket.  The ACH Defendants do attach 44 pages of exhibits which appear to be from Plaintiff's inmate file.  They do not include a certification that these documents are authentic.  Plaintiff, however, does not dispute their accuracy.  These exhibits are properly before the Court and will be considered herein.

The ACH Defendants also point to voluminous medical records Plaintiff filed with the Court which Plaintiff claimed supports his claim in this case but which, they assert, provide no evidence of mental health diagnoses or treatment prior to being detained at the CCJ.  *Id*. at PageID # 2613 (citing DNs 103, 111).  They do not attach them as exhibits to their motion.

4

As the Court explained to Plaintiff in its July 22, 2022, Order regarding Plaintiff's various attempts to file documents into evidence:

> Plaintiff may not simply file exhibits; instead, they may be attached to motions or responses to motions seeking particular relief.  . . .  The Court advises *pro se* Plaintiff that sworn statements and exhibits are appropriate in the Court's consideration of, for example, dispositive motions such as motions for summary judgment, to dismiss, or for default judgment; or to compel discovery responses. Simply filing exhibits and "declarations" or statements is improper and serves no purpose for Plaintiff because the Court will not comb through such free-standing statements or exhibits for evidence[.]

DN 98, PageID # 680-81.  Because, as the Court advised Plaintiff, the filing of these medical records was improper, the Court will not consider them in support of the ACH Defendants' summary-judgment motion either.

Plaintiff filed a "Memorandum of Law" (DN 140) in lieu of the required pretrial memorandum.  The document anticipated a summary-judgment motion from the ACH Defendants making arguments which, in fact, they do make in their summary-judgment motion. DN 140, PageID # 2455.  Because the ACH Defendants' summary-judgment motion offers their refutations of Plaintiff's arguments, the Court considers this document as well.

### 2. Exhaustion

The ACH Defendants argue that Plaintiff filed only one grievance at the CCJ -- about the conditions of his disciplinary confinement -- but filed no grievance related to the provision of medical care or mental health treatment.  DN 152-1, PageID # 2617.  They cite to the affidavit of the CCJ's current jailer Brad Hewell, which they attach to their motion.  Hewell avers that the CCJ has no record of any grievance from Plaintiff other than one complaining of not having a mat/linens/sheet/blanket during his 14-day disciplinary period.[4]  DN 15-23, PageID # 2598.

---

[4] In his response, Plaintiff takes issue as to whether Hewell's affidavit was made on first-hand knowledge.  DN 161, PageID # 2700.  It is not necessary to parse out whether some or all of the affidavit was made on other than firsthand

The Sixth Circuit Court of Appeals has set forth the burden of proof for summary judgment on the issue of exhaustion as follows:

> Because defendants carry the burden of proof for exhaustion, they bear an "initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion" and "that no reasonable jury would be free to disbelieve it." *Doe v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quoting *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)). Summary judgment is appropriate in this context only if "there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Id*. at 961 (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011).

*Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023).   If the Court finds that the ACH Defendants have satisfied their burden of establishing Plaintiff's failure to exhaust his administrative remedies before initiating this action, the burden shifts to Plaintiff to identify specific facts indicating a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

A recent decision from the Sixth Circuit Court of Appeals, *Lamb v. Kendrick*, involved the issue of whether the district court properly granted summary judgment to prison officials as to whether the prisoner-plaintiff had exhausted his administrative remedies.  52 F.4th 286 (6th Cir. 2022).  The district court discredited the plaintiff's affidavit that he filed a second informal complaint to prison officials, in part, because it was uncorroborated.  *Id*. at 296.  The Sixth Circuit opined:

> [A] prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment on exhaustion even if the record lacks corroborating evidence. *Moran v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015). And where, as here, the evidence consists of one party's affidavit against another's, there is no rule of procedure that allows federal courts to disregard the plaintiff's testimony simply because it is self-serving. *Pierce v. Rowland*, 2021 WL 3929549, at *4–*5 (6th Cir. Sept. 2, 2021) (citing *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010)). Thus, given that Lamb submitted his affidavit at the summary judgment stage, his uncorroborated affidavit is sufficient to create a genuine dispute of material fact regarding whether he filed a

---

knowledge because as set out, the Court finds that the ACH Defendants have not carried their burden to show that they are entitled to summary judgment on the exhaustion issue.

> second informal complaint that complied with step one [of the grievance process]. *See id.*; *Moran*, 788 F.3d at 206.

*Id.* (footnote omitted).

Plaintiff states in his response, made under penalty of perjury, that he filed grievances, DN 161, PageID # 2700, and he attaches a document titled "Grievance" in which he stated that he asked to see "medical" for depression and post-traumatic stress disorder (PTSD). *Id.* at PageID # 2718. Because of Plaintiff's sworn response, the Court will not grant summary judgment on exhaustion.

### 3. Physical injury

The ACH Defendants argue that Plaintiff has offered no proof to show any physical injury related to his mental health. DN 152-1, PageID # 2617 (citing 42 U.S.C. § 1997e(e)). They contend that his claim is barred by the PLRA due to his "lack of proof of any physical injury, mental illness, or physical manifestation of a mental condition." *Id.* at PageID # 2618.

Section 1997e(e) provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" However, § 1997e(e) "does not bar claims for constitutional injury that do not also involve physical injury." *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015). It merely limits the type of relief a plaintiff can receive. *Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020). Thus, in so far as Plaintiff "seeks forms of relief other than compensatory damages, his case may proceed." *Id.* (citing *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (suggesting that § 1997e(e) allows prisoners to seek nominal and punitive damages, as well as injunctive relief, for alleged Eighth Amendment violations). Here, the Court allowed Plaintiff's claim for punitive damages

to go forward against Defendants Miss Bonnie and Palm.  DN 46, PageID # 237.  The Court will not grant summary judgment on this issue.

### 4. Deliberate-indifference claim against Defendant Palm

Pretrial detainees, like Plaintiff, "have a right to adequate medical care under the Fourteenth Amendment.  An officer violates that right if that officer shows deliberate indifference to [a pretrial detainee's] serious medical needs[.]"  *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted).  This claim requires the detainee to "show (1) that [he] had a sufficiently serious medical need and (2) that each defendant acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 317 (6th Cir. 2023) (cleaned up).

"[T]o survive summary judgment on a deliberate indifference claim, a pretrial detainee must 'present evidence from which a reasonable jury could find (1) that she had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and [the defendant] either (a) acted intentionally to ignore [the detainees] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the detainee.]'"  *Mercer v. Athens Cnty., Ohio*, 72 F.4th 152, 160–61 (6th Cir. 2023) (brackets in *Mercer*) (quoting *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 597 (6th Cir. 2021), *cert. denied*, 143 S. Ct. 84 (2022)).

#### a. Mental health

The complaint alleged that Defendants Palm and Miss Bonnie were:

unconcerned with the mental health and condition of Riggins while in isolation for such a long period of time.  At no time during Riggins's isolation did Riggins receive any medical or inquiry to his mental condition for such a long period in isolation.  The medical defendants never visited or evaluated Riggins.  The

medical defendants were unresponsive to serious mental-medical needs of Riggins and failed to secure necessary mental-medical resulting in Riggins being denied medical care.  Prior to Riggins's incarceration Riggins was diagnosed with having Post Traumatic Stress Disorder (PTSD) and bipolar.   Riggins was currently experiencing hallucinations and delusional tendency, resulting from Riggins's emotional distress.   The medical defendants . . . were deliberately indifferent to serious mental needs of Riggins, negligence and fail to provide Riggins's right to adequate medical care related to his mental illness. . . .  Riggins submitted numerous medical request slips for his mental condition.  However, they were unanswered or ignored.

*Id*. at PageID # 12 (cleaned up).

Plaintiff's Memorandum of Law, which is sworn to under penalty of perjury, identifies Miss Bonnie as a "Mental Health Professional."   DN 140, PageID # 2473-74.  Plaintiff states, "'Miss Bonnie' was a qualified mental health professional at the Jail.  Miss Bonnie never conducted any routine or periodic wellness check of Riggins's mental health for his entire 10 months in isolation.  Inmates in isolation with psychiatric needs have a right to reasonable access to medical personnel qualified to diagnose[] and treat mental illness."  *Id*. at PageID # 2458.  The only argument Plaintiff puts forth against Defendant Palm, a nurse, related to his mental health is that she did not perform routine mental health checks as set forth in the Bureau of Prisons (BOP) standard of care.  *Id*. at PageID # 2455-56.

The ACH Defendants' summary-judgment motion argues that Plaintiff "never raised any issues or concerns regarding his mental health."  DN 152-1, PageID # 2620.  They assert that "[s]ick call requests are given by inmates to deputies, and these requests are made a part of the inmates file and submitted to the medical department for consideration."  *Id*. at PageID # 2622.[5]

Attached to the ACH Defendants' motion are records generated by the CCJ, including an inmate intake form dated September 19, 2020, and signed by Plaintiff.  DN 152-2, PageID # 2629.  That document records that Plaintiff denied needing immediate medical attention for any

---

[5] They offer no evidentiary support for this assertion.

present illness or injury.  *Id*.  In answer to the question, "Do you have any illness?" Plaintiff listed several physical illnesses (COPD, asthma, emphysema, partial paralysis, colon cancer, heart problems, and the need for enemas), but no mental illness.  *Id*.  He answered "yes" to the question "Have you recently been hospitalized or seen a medical or psychiatric doctor?" but no specifics are recorded on the form.  *Id*.  The intake form also listed four medications that Plaintiff was currently taking (gabapentin, albuteral, provento, and sotalol), but Plaintiff does not argue that they are related to treatment for his mental health.  *Id*.

Also attached to the ACH Defendants' motion is an authorization signed by Plaintiff for release of his most recent medication list from CVS pharmacy.  *Id*. at PageID # 2661.  The ACH Defendants assert in their motion that the request did not return any information regarding medication for mental illness.  DN 152-1, PageID # 2612.  However, the response from CVS is not attached to the motion for summary judgment.

The ACH Defendants also attach a Medical History and Health Appraisal form signed by Plaintiff on October 10, 2020.  DN 152-2, PageID # 2657-58.  The form does not ask about mental health history or diagnoses.  *Id*.  It does ask questions which relate to the possibility of self harm or harm to others, all of which he denied.  *Id*. at PageID # 2658.  Plaintiff stated on the form that at that time he was currently under care for asthma, an enlarged heart, and paralysis.  *Id*. at PageID # 2657.  The form noted that Plaintiff was alert, oriented, cooperative, calm, and reported no hallucinations.  *Id*.

Plaintiff contends in his response to the summary-judgment motion that it is a fact that (1) he suffered from PTSD and depression; (2) that he was prescribed Cymbalta for major depressive disorder; (3) that the ACH Defendants knew of his serious medical conditions from

his intake assessment and his disclosure of his medications; and (4) that the ACH Defendants deliberately ignored his requests for psychiatric treatment.  DN 161, PageID # 2769.

In support, Plaintiff attaches an individual counseling/psychotherapy progress note dated August 29, 2022, from the Indiana Department of Correction.  DN 161-1, PageID # 2707-09. That report, which postdates Plaintiff's imprisonment at the CCJ, notes that he was taking Cymbalta 60 mg for depression/anxiety.  *Id*.  It does not indicate that he was suffering from any mental health condition or that he was taking Cymbalta during the time he was housed at the CCJ.  *Id*.  It also does not state that he has a diagnosis of bipolar depression or PTSD.  *Id*.  It does refer to Plaintiff's detention at the CCJ:  "[P]atient indicated he still has reoccurrences of RHU Christian [C]ounty jail in Ky."  *Id*. at PageID # 2708.

Plaintiff also attaches a CCJ sick call form dated February 10, 2021, stating that he had been in isolation for more than five months without being seen by a mental health professional.  *Id*. at PageID # 2711.  He stated on the form that he had "previously been diagnosed with having PTSD and bipolar depression and the confinement in the hold is making me experience hallucinations and delusional thoughts (talking to myself).  I cannot sleep.  I need medical and mental treatment.  Previous requests were unanswered."  *Id*.

Plaintiff also attaches a February 16, 2021, sick call form stating, "I have previously submitted sick call slip to talk with a mental health professional. . . . I am not receiving any medical attention for my bipolar depression."  *Id*. at PageID # 2714 (cleaned up).

A March 23, 2021, request states that Plaintiff had been having hallucinations.  *Id*. at PageID # 2711.

The Court finds that Plaintiff has demonstrated a genuine issue as to whether he suffered from mental illness while in segregation at the CCJ.

But as it relates to Defendant Palm, that disputed fact is not material to Plaintiff's deliberate-indifference claim because Plaintiff only argues that Defendant Palm did not perform *routine* mental health checks as required by the BOP standards.  DN 140, PageID # 2455-56.  However, the BOP is a federal agency which houses federal prisoners in federal prisons.  *See, e.g.*, *Lowry v. Fed. Bureau of Prisons*, No. CIV.A. 05-CV-131-JBC, 2005 WL 1523564, at *2 (E.D. Ky. June 24, 2005) ("The BOP is the federal agency which administers the operation of federal prisons.").  Plaintiff was detained in a county jail.  Plaintiff does not support his argument with a copy of the BOP standards, nor does he argue that BOP standards apply to the CCJ.  Even if those standards are what Plaintiff says they are and were in use at the CCJ, merely violating a prison regulation does not give rise to a constitutional violation.  *Williams v. Thomas*, No. 116CV01330, 2019 WL 1905166, at *5 (W.D. Tenn. Apr. 29, 2019) ("[T]he violation of a prison regulation is not actionable under § 1983."); *Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) ("Merely failing to follow a particular administrative rule does not constitute a violation of the constitution.").[6]

Because even assuming that Plaintiff was suffering from PTSD and bipolar depression at the time, Plaintiff has failed to demonstrate that Defendant Palm's failure to perform routine mental health checks was a constitutional violation, Defendant Palm is entitled to summary judgment on this claim.

---

[6] Plaintiff does not point to any caselaw, and the Court can find none holding that a nurse is deliberately indifferent for not performing *sua sponte* or routine mental health wellness checks on prisoners in administrative segregation. The Court notes that its research did uncover caselaw from California discussing recent prison regulations requiring welfare checks on inmates in administrative segregation, *see, e.g.*, *Suarez v. Beard*, No. 15-CV-05756-HSG, 2017 WL 2652199, at *1 (N.D. Cal. June 20, 2017) (not a deliberate-indifference case), and evidence that in Kentucky state prisons, daily welfare checks of prisoners in segregation are done.  *See Burke v. Hart*, No. 5:19-CV-00009, 2020 WL 4572351, at *4 (W.D. Ky. Aug. 7, 2020) (not involving a deliberate-indifference claim).

b. *Medical care*

Plaintiff's complaint alleged that he was denied medical care when he was denied bedding, including his mat, for 14 days which resulted in "excruciating" pain of having to "sleep and lay only a steel cold bunk." DN 1, PageID # 9. Specifically, he alleged that Defendant Palm was deliberately indifferent in failing to uphold her duty "to intervene as to the confiscation of Riggins's essential bedding, knowing full well or should have known that it was putting Riggins in a substantial risk of injury . . . due to spinal cord injury." *Id*. at PageID # 26.

The ACH Defendants' motion for summary judgment focuses only on Plaintiff's deliberate-indifference claim related to his alleged mental illness. They do not address his claim of deliberate indifference regarding the removal of his bedding

In his Memorandum of Law, Plaintiff argues that Defendant Palm breached her duty of care by failing to provide medical care for his chronic pain due to his spinal cord injury. DN 140, PageID # 2455. He also asserts that several times he tried unsuccessfully to attract Defendant Palm's attention regarding a "medical emergency" while in isolation. *Id*. at PageID # 2458. He does not explain what "medical emergency" he was referring to or whether these attempts were made while he was in disciplinary segregation (where he was housed without his bedding, including his mat, for at least part of the day) or administrative segregation (where he was provided bedding). [7]

A sick call form dated October 7, 2020, *i.e.*, while he was in disciplinary segregation, Plaintiff attached to his response stated that he was in severe pain due to the confiscation of his

---

[7] The Memorandum of Law also contains Plaintiff's statement that due to the lack of a blanket he suffered severe asthma attacks and later developed pneumonia. DN 140, PageID # 2458. Because Plaintiff did not allege he contracted pneumonia in his complaint, this allegation is not part of this litigation. *See Howard v. Tennessee*, 740 F. App'x 837, 843 (6th Cir. 2018) ("[P]laintiffs cannot raise new claims in their summary judgment briefing and should instead request leave to amend their complaint.") (listing cases).

mat.  DN 161-1, PageID # 2710.  It further stated, "For several days I was unable to move at all. I suffer from a spinal cord injury which left me paralyzed.  *I would like to see medical* and request that my mat be returned to me due to my physical disability.  I am in severe pain and at times cannot pick my tray off the [illegible]."  *Id*. (emphasis added).  It states that this was his third request to have his mat returned to him.  *Id*.

The Court need not address whether Plaintiff satisfied the objective component of a deliberate-indifference claim, *i.e.*, that he had a serious medical need due to pain because there is no evidence in the record to support a finding for Plaintiff on the subjective component. Plaintiff's complaint speaks of Defendant Palm's "duty" to intervene to prevent him from being denied a mat; however, a Fourteenth Amendment claim requires that Defendant Palm was aware or should have been of the risk to Plaintiff.  He does not argue and does not offer any evidence from which a jury could conclude that Defendant Palm was aware that Plaintiff had been placed in disciplinary segregation without his mat.  The sick call request in which Plaintiff states that he "would like to see medical," does not support the conclusion that Defendant Palm was aware that Plaintiff was without a mat.  It suggests instead that he had not been seen by any medical personnel, including Defendant Palm.  There is no evidence in the record that Defendant Palm denied a request to have his mat returned to him.

The Court finds that Plaintiff fails to satisfy the subjective component of a Fourteenth Amendment deliberate-indifference claim.  *See, e.g.*, *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (holding that summary judgment in favor of prison official was warranted because detainee failed to satisfy the subjective component where there was "no evidence that a reasonable officer in [defendant's] position would have been aware of [the detainee's] needs.").

Accordingly, Defendant Palm is entitled to summary judgment on this deliberate-indifference claim as well.

### 5. *Failure-to-train claim*

The Court allowed a failure-to-train claim to go forward against ACH regarding the lack of checks on his wellbeing while he spent months in isolation.  DN 12, PageID # 98.

The ACH Defendants argue that Plaintiff has not identified any policy or procedure of ACH.  DN 152-1, PageID # 2625.

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)).  Plaintiff may demonstrate that ACH was deliberately indifferent by showing that it either (1) "failed to act 'in response to repeated complaints of constitutional violations by its officers,' . . . such that it 'was clearly on notice that the training in this particular area was deficient and likely to cause injury,'" *Ouza v. City of Dearborn Heights, Mich.*, 969 F.3d 265, 287 (6th Cir. 2020) (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)); or (2) failed to train its personnel when the need for training "[was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need," *id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

In a failure-to-train claim, the plaintiff's injury must be a "highly predictable consequence" of inadequate training.  *See Connick*, 563 U.S. at 64 (internal citation omitted).  "[F]ailure-to-train claims are notoriously difficult to prove."  *Green v. Tennessee*, No. 3:17-CV-01293, 2020 WL 6874946, at *6 (M.D. Tenn. Nov. 23, 2020), *aff'd sub nom. Green v.*

*Tennessee*, No. 20-6396, 2021 WL 6197327 (6th Cir. Sept. 8, 2021).  The Supreme Court has held that a government entity's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick*, 563 U.S. at 60.

Plaintiff has failed to offer evidence to support that ACH received repeated complaints or that the need for training was obvious related to the need to provide prophylactic mental health checks on inmates in isolation.  It is not enough to infer that a training program must be deficient because Plaintiff did not receive mental health care.  Such an inference does not prove direct causation.  *See Canton*, 489 U.S. at 391 (holding that, in the failure-to-train context, it is insufficient "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct").  Consequently, the ACH Defendants are entitled to summary judgment on this issue.

### 6. Medical malpractice claim

Having granted summary judgment for Defendants ACH and Palm as to all of the federal-law claims against them, to the extent that Plaintiff alleged a state-law medical malpractice claim, DN 1, PageID # 25, the Court will dismiss it.  *See* 28 U.S.C. § 1367(c)(3) (noting that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction"); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (where "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that the ACH Defendants' motion for summary judgment (DN 152) is

**GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's medical malpractice claim is

**DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

The Clerk of Court is **DIRECTED** to terminate the ACH and Lindsay Palm as

Defendants in this action.

Date:   September 18, 2023

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge

United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.009

17