UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-CV-P104-JHM

LESTER RIGGINS                                                          PLAINTIFF

v.

CHRISTIAN COUNTY, KENTUCKY et al.                           DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is the renewed motion for summary judgment filed by the Christian

County Jail (CCJ) Defendants: Christian County, former Jailer Brad Boyd, Colonel Steve Howard,

Captain Davy Burd, Lt. Caleb Hargrove, and Captain Wesley Campbell (DN 178). *Pro se* Plaintiff

Lester Riggins has responded (DN 182), and the CCJ Defendants have replied (DN 183). Plaintiff

has filed a sur-reply (DN 184). The matter being ripe, the Court considers the motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The issues in this litigation arise from Plaintiff's detention as a pretrial detainee at the CCJ.

On initial review of the complaint (DN 1) and amended complaint (DN 55)[1] under 28 U.S.C.

§ 1915A, the Court allowed the following claims relevant to the CCJ Defendants[2] to go forward:

(1) Plaintiff's Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims against

Christian County for intentional discrimination and failure to provide him with reasonable

accommodations for his physical and mental handicaps; (2) Plaintiff's claims against Christian

County related to its failure to train employees; (3) Plaintiff's Fourteenth Amendment deliberate

---

[1] The amended complaint named Defendants Howard, Boyd, Burd, Campbell, and Hargrove in their individual capacities for monetary and punitive damages.

[2] Plaintiff's complaint also asserted claims against medical providers at CCJ alleging, *inter alia*, deliberate indifference to serious medical needs based on the denial of mental and medical health care, and medical malpractice. The Court granted the medical defendants' motion for summary judgment by Memorandum Opinion and Order dated September 19, 2023. (DN 167). As such, Plaintiff's claims relating to medical treatment at CCJ have been dismissed from this action.

indifference claims against Christian County related to being kept in isolation with no bedding or cane; and (4) Plaintiff's Fourteenth Amendment claims against Defendants Howard, Boyd, Burd, Campbell, and Hargrove regarding the conditions of his confinement, i.e., being kept in isolation with no bedding or cane.  (DNs 12, 46).

Previously, the CCJ Defendants brought a motion for summary judgment seeking dismissal of Plaintiff's claims.  (DN 150).  At that time, the Court dismissed the failure to train claim against Christian County and denied the remainder of the motion without prejudice to refile a properly supported for summary judgment.  (DN 169).  The CCJ Defendants now renew their request for the Court to dismiss the ADA/RA claims against Christian County; the Fourteenth Amendment deliberate indifference claim against Christian County; and the Fourteenth Amendment conditions of confinement claim against the individual Defendants Howard, Boyd, Burd, Campbell, and Hargrove.  (DN 178).

## II.    MOTION FOR SUMMARY JUDGMENT

### A.

The CCJ Defendants move for summary judgment on the following grounds: (1) Plaintiff's claims are barred by the Prison Litigation Reform Act (PLRA) for failure to exhaust administrative remedies; (2) Plaintiff's Fourteenth Amendment claims fail as a matter of law; (3) Plaintiff has failed to show physical injury as required by the PLRA; (4) the individual Defendants are protected from suit by the doctrine of qualified immunity; (5) the ADA and RA claims fail as a matter of law; and (5) Christian County is protected by the doctrine of sovereign immunity; alternatively, Plaintiff has failed to allege and prove a violation under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  (DN 178-1, PageID.2792-2803).  In support of their motion, the

CCJ Defendants submit a copy of the CCJ Inmate Grievance Procedure and the sworn affidavit of Defendant Boyd, former Jailer at CCJ.  (DNs 178-2 to 178-3).

**B.**

Plaintiff has filed a response to the summary judgment motion, captioned as "Motion for Opposition of Defendants' Summary Judgment," in which he argues that he should be excused from the administrative exhaustion requirement; that the CCJ Defendants' removal of his bedding while in isolation violated his constitutional rights and ran afoul of CCJ institutional policies; that Christian County adopted an unwritten policy or custom of confiscating inmates' bedding while confined in disciplinary segregation;[3] and that the CCJ Defendants are not entitled to qualified immunity.  (DN 182, PageID.2824-2829).

Attached to Plaintiff's response is a "renewed memorandum of law;"[4] excerpts from the CCJ Inmate Rules and Regulations Handbook (Inmate Handbook); excerpts from the CCJ Policy and Procedure manual (CCJPP); copies of Plaintiff's grievance documents relating to his bedding and mattress; selected regulations from Section 501 Kentucky Administrative Regulations (KAR) relating to prisoner rights; affidavits by inmates Driver and Parker; Plaintiff's "Refusal of Treatment Medical Release" forms; Plaintiff's psychiatric treatment records and medication list; and a portion of the CCJ Defendants' answers to Plaintiff's request for admissions.  (DNs 182-2 to 182-16).

---

[3] The Court uses "isolation" and "segregation" interchangeably herein.

[4] In lieu of the required pretrial memorandum (DN 52), Plaintiff filed a memorandum of law, sworn to under penalty of perjury.  (DN 140).  The contents of Plaintiff's "renewed memorandum of law" is nearly identical in substance with the portions relating to dismissed medical claims and defendants redacted.  The renewed memorandum nonetheless contains a number of arguments relating to previously dismissed claims as well as claims not alleged in the complaint.  The Court considers only those contentions that are germane to the current motion.

**C.**

In their reply, the CCJ Defendants argue that Plaintiff has not presented evidence creating a genuine issue of material fact regarding his allegations against them.  They aver that the un-notarized statements of Driver and Parker are irrelevant, unreliable, and cannot be considered evidence of record sufficient to create an issue of material fact.  (DN 183, PageID.2895-2896).  They further argue that Plaintiff failed to comply with the CCJ grievance procedure.  (*Id.*, PageID.2897).  Finally, the CCJ Defendants argue that Plaintiff failed to address the remaining substantive arguments raised in their renewed motion for summary judgment, thereby waiving any argument in response.  (*Id.*, PageID.2897-2898).

**D.**

Plaintiff has filed a sur-reply in which he explains the relevance of Driver's and Parker's statements.  He reiterates that there was no grievance appeal process available to Plaintiff as there was no appeal provision contained in the grievance policy of the Inmate Handbook.  (DN 184, PageID.2901-2902).

**E.**

The undisputed facts in this litigation are as follows: Plaintiff was a pretrial detainee at the CCJ beginning on September 19, 2020.  (DN 1, PageID.9; DN 178-3, PageID.2807).  Plaintiff identifies as a paraplegic; he is partially paralyzed in his legs and uses a wheelchair, walker, or cane.  (DN 1, PageID.9; DN 178-3, PageID.2807-2808).  He filled out an intake form when he entered the CCJ.  (DN 178-3, PageID.2807-2808; DN 183-1, PageID.2900).  He was initially housed in the medical cell and was allowed to keep his cane.  (DN 1, PageID.9; DN 178-3, PageID.2808; 182-1, PageID.2834).  On September 30, 2020, Plaintiff was involved in an

altercation with another inmate and was charged with and pleaded guilty to assault under extreme emotional disturbance.  (DN 138, PageID.2435; DN 178-3, PageID.2808).

After the altercation, Plaintiff was placed in disciplinary segregation for 14 days.  (DN 1, PageID.9; DN 178-3, PageID.2808).  During that time, his bedding was removed for at least 16 hours during the day and evening hours, and his cane was confiscated.  (DN 1, PageID.9; DN 178-3, PageID.2807-2808).  He was kept in administrative segregation for up to ten months while he detained at CCJ.[5]  (DN 1, PageID.12; DN 178-3, PageID.2809-2811).  While in segregation, Plaintiff was only allowed out of his cell one hour each day.[6]  (DN 1, PageID.12).  The CCJ has an inmate grievance policy and a policy for requesting medical treatment.  (DN 1, PageID.11-12; DN 178-3, PageID.2808-2810).

Facts remaining in dispute are: (1) whether Plaintiff filed any grievance other than one related to the removal of his bedding; (2) whether Plaintiff's bedding was removed from his cell for 24 hours per day while he was housed in disciplinary segregation (or for only 16 hours); and (3) the rationale for Plaintiff's placement in administrative segregation.

### III.    LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the

---

[5] Plaintiff's complaint sometimes refers to his period in isolation as lasting seven, rather than ten, months.  For purposes of the instant motion, the Court will refer to his time in isolation as ten months as the CCJ Defendants do not controvert or clarify the duration in their submissions.  The three-month difference does not change the Court's analysis.

[6] Defendants do not contradict this allegation, and the Court considers it undisputed.

moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## IV.   DISCUSSION

### A.

The Court first addresses the CCJ Defendants' argument that Plaintiff failed to exhaust his administrative remedies under the PLRA. The PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner . . .  until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution."  *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). A plaintiff must "make 'affirmative efforts to comply with the administrative procedures.'"  *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223–24 (6th Cir. 2011)).

The PLRA's exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  *Doe 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)).  Moreover, "because an inmate's failure to exhaust his administrative remedies is an affirmative defense (not a jurisdictional requirement) that the defendants have the burden to plead and prove by a preponderance of the evidence, '[a] district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust.'"  *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (quoting *Snyder*, 945 F.3d at 961).

In support of their argument that Plaintiff failed to exhaust his administrative remedies, the CCJ Defendants point to the CCJPP relating to the grievance procedure in place at CCJ at the time of Plaintiff's detention, and to the sworn affidavit of former Jailer Boyd.  (DN 178-1, PageID.2792-2795; DN 178-2; DN 178-3).  Boyd attests that Plaintiff filed a single grievance pertaining only to the removal of his mat, bed linens, sheets, and blankets during his 14-day disciplinary segregation period but did not appeal that grievance.  (DN 178-3, PageID.2809).  Boyd states that Defendant Burd responded to Plaintiff's grievance on Boyd's behalf "by handwriting on the Grievance that these items were provided 8 hours per day.  Either the original or a copy of the Grievance with the

response written on its face was returned to [Plaintiff.]"  (*Id.*).[7]  According to Boyd, Plaintiff did not appeal that grievance.  (*Id.*).  Boyd further attests that CCJ has no record of any written grievance concerning Plaintiff's medical or mental health treatment.  (*Id.*).  The CCJPP Inmate Grievance Procedure states: "If not satisfied with the disposition of the grievance, the inmate may appeal the decision to the Jailer.  This appeal must occur within 48 hours of receipt by the prisoner of the initial response."  (DN 178-2, PageID.2805-2806).  The CCJ Defendants conclude that because Plaintiff failed to appeal his grievance within 48 hours, his administrative remedies are unexhausted pursuant to the PLRA.  (DN 178-1, Page.ID.2795).

As stated in his verified complaint (DN 1, PageID.11), Plaintiff's response reiterates that he followed the grievance procedure as instructed by the Inmate Handbook, which requires only that a grievance be in written form, addressed to the Jailer, and sealed in an unstamped envelope. (DN 182, PageID.2824).  The complaint likewise states that he "follow[ed] the instructions by submitting a grievance as stated" in the Inmate Handbook on October 19, October 26, and November 2, 2020, but his grievances went "ignored and unanswered."  (DN 1, PageID.11).

Plaintiff attaches an exhibit to his response consisting of undated, handwritten grievance documents.  (DN 182-7, PageID.2864-2866).  One, labeled "First Attempt," states that Plaintiff wanted a written explanation as to why he was denied bedding and a mat while he was housed in disciplinary isolation.  It references both the ADA and his civil rights.  (*Id.* at PageID.2864).  The next two state that he is again attempting to obtain a written explanation as to why he was deprived of bedding because he did not receive any response to his first attempt.  (*Id.* at PageID.2864-2865).

---

[7] The CCJ Defendants do not produce a copy of this grievance as part of their motion papers.

The CCJ Defendants assert that, even if Plaintiff's handwritten grievance documents are authentic,[8] Plaintiff nonetheless did not appeal his bedding grievance (or any other purported grievance) within 48 hours pursuant to the applicable grievance procedure at CCJ rendering his claim(s) unexhausted.  (DN 781-1, PageID.2794-2795).  The CCJ Defendants aver that Plaintiff "acknowledged that Christian County defendants advised him of the Christian County Jail rules and regulations,[9] and that said rules and regulations are posted in all living areas."  (DN 183, PageID.2897-2898).

Plaintiff, in turn, "admits he was informed of the procedure by the Christian County Jail Inmate Rules and Regulations Handbook."  (DN 184, PageID.2901-2902).  However, "[t]here is no mentioning of an appeal provision" in the Handbook and thus "there was no appeal process available" to him.  (*Id.*).  To that end, Plaintiff produces a photocopied document which he states is page 4 of the Inmate Handbook provided to inmates at CCJ.  The document reads, in pertinent part:

> GRIEVANCES
>
> 1. Any inmate will be allowed to file a grievance if he/she believes he/she has been subjected to abuse, harassment, a violation of civil rights or has been denied privileges without justification.
>
> 2. Such grievances shall be in written form, addressed to the Jailer and sealed in an unstamped envelope.
>
> 3. An inmate shall not fear against reprisal from initiating grievance procedures in an attempt to resolve legitimate complaints.

(DN 182-2, PageID.2859).

---

[8] The CCJ Defendants dispute the authenticity of the grievance documents submitted by Plaintiff, but do not articulate the basis for the authenticity challenge.

[9] It is unclear from the CCJ Defendants' submissions whether the CCJPP is the same document as the Christian County Jail rules and regulations.

As Plaintiff points out, there is no language regarding appeals in the document he has submitted.  Notably, the CCJ Defendants do not dispute the apparent discrepancy between the Inmate Handbook and the CCJPP grievance provisions, nor do they dispute that the Inmate Handbook does not set forth an appeal procedure.  (DN 183, PageID.2897-2898).

As stated above, an inmate "must exhaust available remedies, but need not exhaust unavailable ones."  *Ross*, 578 U.S. at 642.  "Unavailability" exists in three situations: first, when the grievance procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id*. at 1859.  Second, unavailability exists where the "administrative scheme . . .  [is] so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id*.  Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," unavailability exists.  *Id*. at 1860.

Plaintiff states that he submitted multiple grievances to CCJ officials that went unanswered despite following the procedure set forth in the Inmate Handbook.  (DN 1, PageID.11).  Plaintiff has produced evidence indicating that the Inmate Handbook provided to him did not include a provision setting forth an appeal requirement or detailing the process to appeal an adverse grievance response.  If, as propounded by the CCJ Defendants, the CCJPP Inmate Grievance Procedure requires an appeal to be filed within 48 hours of the initial grievance response, but no such language is found in the Inmate Handbook disseminated to prisoners advising and instructing them of the same, then the CCJ grievance procedure would effectively become unnavigable or operate as an administrative dead end.  As such, Plaintiff has raised a genuine dispute as to whether a grievance appeal process was available to him.  *See Daniel v. Harper*, No. 5:17-CV-19-TBR,

2017 WL 6522090, at *5 (W.D. Ky. Dec. 19, 2017) ("The Court cannot rule as a matter of law that Plaintiff failed to exhaust remedies that do not appear to have been available to him at the time.  There is a difference between an inmate's lack of knowledge about the appeals process and documentation given to him which misrepresents that process.") (collecting cases); *see also*, *e.g.*, *Troche v. Crabtree*, 814 F.3d 795, 801 (6th Cir. 2016) ("In the end, it cannot be said that an inmate did not exhaust his administrative remedies because he failed to do something not specified, outlined, or required by his prison's grievance procedure.").

Because Plaintiff has raised a genuine dispute as to whether he had remedies available, the CCJ Defendants have not met their burden on the issue of exhaustion and summary judgment is denied on this ground.

## B.

The Court turns to the CCJ Defendants contention that Plaintiff does not satisfy the provision of the PLRA mandating a showing of physical injury insofar as he alleges only pain from not having a mat during a portion of each of the 14-day disciplinary period, and mental injury arising from his other claims.  (DN 178-1, PageID.2797-2798) (citing 42 U.S.C. § 1997e(e)).

Section 1997e(e) provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]"  However, § 1997e(e) "does not bar claims for constitutional injury that do not also involve physical injury." *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015).  It merely limits the type of relief a plaintiff can receive.  *Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020) (prisoner alleging non-physical injuries resulting from Eighth Amendment violation was not barred by PLRA from requesting punitive damages, injunctive relief, and declaratory relief); *accord*, *Turner v. Long*, No. 23-5685,

2024 WL 3029249, at *3 (6th Cir. June 17, 2024) ("Although the PLRA bars prisoners from seeking compensatory damages for 'emotional' injuries, it does not bar them from seeking nominal or punitive damages for those injuries.").

Inasmuch as Plaintiff "seeks forms of relief other than compensatory damages, his case may proceed." *Small*, 963 F.3d at 543 (citing *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019)) (suggesting that § 1997e(e) allows prisoners to seek nominal and punitive damages, as well as injunctive relief, for alleged Eighth Amendment violations). The Court notes that it allowed claims against Defendants Howard, Boyd, Burd, Campbell, and Hargrove in their individual capacities for punitive damages as well as compensatory damages to continue. (DN 46, PageID.237).

The Court finds that the CCJ Defendants are not entitled to summary judgment on this ground.

## C.

The Court next discusses the merits of Plaintiff's Fourteenth Amendment claims, which the CCJ Defendants urge should be dismissed for Plaintiff's failure to establish a constitutional violation. (DN 178-1, PageID.2796-2800).

Plaintiff brings his Fourteenth Amendment challenge alleging inhumane conditions of confinement, against the individual CCJ Defendants Howard, Boyd, Burd, Campbell, and Hargrove, on the basis that jail officials confiscated his cane, removed his bedding for 14 days while he was confined to disciplinary segregation, and that his continued administrative segregation—consisting of lockdown 23 hours per day, seven days per week—for ten months, was punitive in nature. (DN 1, *passim*).

While the Eighth Amendment provides a convicted prisoner the right to be free from cruel and unusual punishment, it is the Due Process Clause of the Fourteenth Amendment that provides the same protections to pretrial detainees. *Thomas v. Mayfield Police Dep't*, No. 5:21-CV-P97-TBR, 2021 WL 6135560, at *4 (W.D. Ky. Dec. 29, 2021) (citing *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018)). Thus, the Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees. *Bensfield v. Murray*, No. 4:21-CV-P104-JHM, 2022 WL 508902, at *2 (W.D. Ky. Feb. 18, 2022) (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). This standard has two prongs. To satisfy the objective prong, a plaintiff must show "that [s]he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Contemporary standards of decency determine whether conditions of confinement meet this standard. *See*, *e.g.*, *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9, (1992)). To satisfy the second prong under the Fourteenth Amendment, a plaintiff must show that defendants acted "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner*, 14 F.4th at 596 (quoting *Farmer*, 511 U.S. at 836); see also *Brannon v. Guill*, No. 5:21-CV-P141, 2022 WL 433164, at *3 (W.D. Ky. Feb. 11, 2022) (observing that "*Brawner* . . . changed the subjective prong of the standard for Fourteenth Amendment claims brought by pretrial detainees and held that a 'modified' deliberate-indifference standard of recklessness now applies.").

The CCJ Defendants urge dismissal of Plaintiff's claims on the basis that they fail as a matter of law because Plaintiff has offered no evidence, beyond the allegation of placement in

isolation and deprivation of bedding, which, even if true, does not rise to the level of deliberate indifference. (DN 178-1, PageID.2799). They argue that the "receipt of due process, the absence of extreme deprivation, and lack of injury defeat the Plaintiff's claims." (*Id*.).

For legal support, the CCJ Defendants cite to case law standing for the proposition that the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth or Fourteenth Amendments. (DN 178-1, PageID.2797) (citing *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."); *Jones v. Toombs*, 77 F. 3d 482 (6th Cir. 1996) (two weeks without a mattress did not violate the Eighth Amendment); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (three days without a blanket and mattress during disciplinary confinement did not violate the Eighth Amendment).

Additionally, this Court has found that a Fourteenth Amendment violation does not lie for the deprivation of a mattress during ordinary waking hours. *See Velasquez v. Lewis*, No. 4:20CV-00172-JHM, 2022 WL 1914072, at *2–3 (W.D. Ky. June 3, 2022) (the objective prong of conditions of confinement standard is not met where pretrial detainee did not have mattress or bedding from 8:00 a.m. until 10:00 p.m. each day); *accord*, *e.g.*, *Infante-Cabrera v. Donnellon*, No. 2:11-CV-14340, 2012 WL 3779181, at *3 (E.D. Mich. Aug. 31, 2012) (dismissing for failure to state a claim, concluding that the "deprivation of a mattress during daylight hours does not deprive a prisoner of the minimal civilized measure of life's necessities.").

Here, the parties dispute whether the removal of the mattress and bedding from Plaintiff's disciplinary segregation cell occurred only during daylight hours or 24 hours per day. Boyd attests to a practice at CCJ where mattress, bed linens, and blanket are provided to inmates in disciplinary

segregation from 10:00 p.m. to 6:00 a.m., and removed outside of those hours. (DN 179-3, PageID.2808-2809). This is a matter of "unwritten policy," designed "to discourage inmates from intentionally violating inmate rules to be placed in a private cell." (*Id.*). Plaintiff has denied that he was provided bedding between the hours of 10:00 p.m. and 6:00 a.m. (DN 138, PageID.2434). And he states that he was denied a mat (mattress), sheet, and blanket "for the first 14 days" in disciplinary segregation, raising the inference that his bedding was removed during both overnight and ordinary waking hours. (DN 1, PageID.9). An issue of fact therefore exists as to whether Plaintiff had access to a mattress and blankets for the entirety of his 14-day disciplinary segregation.

Assuming Plaintiff did not have access to a mattress for the duration of his 14-day segregation, he does not allege any injury beyond "chronic back pain" as a result of the deprivation. As such, his conditions of confinement claim based upon the removal of his mattress must fail as to the objective component.[10] *See, e.g.*, *Richmond*, 450 F. App'x at 455 ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."); *Whorton v. DeAngelo*, No. 21-11046, 2023 WL 6546668, at *5 (E.D. Mich. Aug. 15, 2023), *report and recommendation adopted*, No. 21-11046, 2023 WL 6367685 (E.D. Mich. Sept. 29, 2023) ("During his deposition, [Plaintiff] testified that he did not have a mattress for 10-13 days . . . . The deprivation of a mattress for that period, absent evidence of a physical injury, does not violate the Eighth Amendment."); *see also*, *e.g.*, *Grissom v. Davis*, 55 F. App'x 756, 757–58 (6th Cir. 2003) (despite allegedly resulting "body

---

[10] While Plaintiff also claims that he was subject to "extreme cold" in the absence of proper bedding, causing asthma attacks and a bout of pneumonia, (DN 182-1, PageID.2841; DN 138, PageID.2437), these allegations were not part of his complaint and therefore are not properly before the Court. *See Howard v. Tennessee*, 740 F. App'x 837, 843 (6th Cir. 2018) ("[P]laintiffs cannot raise new claims in their summary judgment briefing and should instead request leave to amend their complaint.") (collecting cases).

aches," the plaintiff "neither alleged nor presented any evidence that the seven-day mattress restriction deprived her of basic human needs or caused her to suffer serious harm."). Plaintiff's medical condition of partial paralysis does not alter this conclusion. *See*, *e.g*., *Cook v. Leitheim*, No. 1:22-CV-630, 2022 WL 3040342, at *6 (W.D. Mich. Aug. 2, 2022) ("Despite variations on: (1) the reason for the restriction; (2) the duration of the restriction; (3) the susceptibility of the prisoner to injury; and (4) the alleged injury, the courts in the Sixth Circuit have routinely rejected Eighth Amendment claims for mattress restrictions.") (collecting cases).

Plaintiff cites to caselaw in which inmates with specialized medical needs were ignored or disregarded giving rise to an Eighth Amendment violation. (DN 182, PageID.2827) (citing *Hicks v. Frey*, 992 F.3d 1450 (6th Cir. 1993) (paraplegic inmate was subjected to conditions of confinement which rendered him essentially bedridden and deprived him of basic human needs); *Leach v. Shelby Cnty*., 891 F.2d 1241 (6th Cir. 1989) (paraplegic inmate in "deplorable" conditions was not given a special mattress or assistance with bathing or bodily functions for his first ten days in county jail).

Here, in contrast, Plaintiff does not allege, much less present evidence, how the deprivation exacerbated his existing medical condition or to what extent. Rather, he concludes that he suffered "extreme physical and emotional distress [from] having to sleep and lay on only a steel bunk without any essential bedding[,] having a physical medical condition (asthma and spinal cord injury to his back. [Plaintiff] is entitled to relief." (DN 1, PageID10-11). There is no evidence of record that Plaintiff sought medical treatment for his back pain during or after his period of disciplinary segregation,[11] nor did he complain of any symptoms or pain in his grievances to the

---

[11] Plaintiff's complaint states that he "submitted numerous medical request slips for his mental condition[.]" (DN 1, PageID.12).

Jailer.   Plaintiff has therefore failed to establish an essential element of his conditions of confinement claim, specifically, that the conditions presented a substantial risk of serious harm. *See*, *e.g.*, *Carter v. Hickok*, No. 16-2423, 2017 WL 4676279, at *1 (6th Cir. Apr. 28, 2017) (affirming grant of summary judgment where prisoner-plaintiff claimed four-day mattress restriction caused exacerbation of his multiple sclerosis, explaining that,  "[s]ummary judgment is properly entered where there is no evidence to support the essential elements of the opposing party's case . . . .  The record also shows that Carter did not request any medical treatment after being deprived of the mattress for three nights.  The only evidence in support of Carter's claim was a note from a different prison seven years earlier indicating that he was a '[h]igh risk for mattress restrictions.'").  Plaintiff therefore fails to describe conditions of confinement sufficiently serious to meet the objective component of the *Farmer/Brawner* standard.

To the extent that Plaintiff avers that the removal of his mattress violates internal CCJ policy (DN 182-1, PageID.2833; DN 182-5, PageID.2862), it is well-settled that failure to follow institutional policy is not a constitutional violation. *See*, *e.g.*, *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) (holding that a failure to follow a policy directive does not rise to the level of a constitutional violation because a policy directive does not create a constitutional right or protectable liberty interest).

With respect to Plaintiff's cane, he does not claim that he suffered any medical problems or was in any physical danger due to the absence of his cane.  Indeed, he has not alleged facts indicating that the conditions were serious or posed him harm or that he was deprived of personal safety without his cane.  There is no evidence of a grievance or medical request for the return of the cane.  He merely alleges that he cannot walk without the use of "auxiliary aids such as wheelchair, walker, or cane," and that his cane was confiscated by CCJ officials.  (DN 1,

PageID.9).   Yet he does not dispute Boyd's attestation that he was provided with a wheelchair when he left his cell.  (DN 178-3, PageID.2809).   Plaintiff therefore fails to establish the objective component of a conditions of confinement claim with respect to his cane.  *See*, *e.g.*, *Miller v. Palmer*, 230 F.3d 1358 (6th Cir. 2000) (upholding grant of summary judgment where plaintiff presented no evidence that alleged deprivations exposed him to a substantial risk of serious harm or posed a danger him).

Finally, to the extent Plaintiff posits that his administrative segregation, i.e., remaining in isolation 23 hours per day for a duration of ten months, amounts to an unconstitutional condition of confinement (DN 1, PageID.12),[12] the CCJ Defendants aver that jail officials acted reasonably and pursuant to the safety and security of Plaintiff and other inmates detained at the jail. (DN 178-1, PageID.2795-2796, 2800).

The Fourteenth Amendment's due process clause protects pretrial detainees from "punish[ment] prior to an adjudication of guilt."  *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  The Supreme Court explained in *Bell v. Wolfish* that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Bell*, 441 U.S. at 539 (internal citations omitted).  Stated somewhat differently, restrictions that amount to punishment may violate a pretrial detainee's substantive due process rights, but a defendant does not violate a pretrial detainee's rights if the defendant has a legitimate governmental objective for imposing the restrictions or conditions.  *Martucci v. Johnson*, 944 F.2d

---

[12] Much of Plaintiff's briefing focuses on procedural due process claims arising out of his periods of segregation.  (DN 182-1, PageID.2848).  Plaintiff's motion for leave to add a claim that he was placed in disciplinary segregation without a hearing was denied earlier in this litigation.  (DN 87, DN 119, PageID.2235-2236).  He also argues that he did not receive periodic reviews while in administrative segregation, but this was not alleged in the complaint.  Accordingly, any challenge to the procedures used to place him and retain him in segregation are not properly before the Court.

291, 294 (6th Cir. 1991).   A pretrial detainee can establish that a defendant subjected him to unconstitutional punishment by showing either (1) "an expressed intent to punish on the part of the detention facility officials," or (2) that "a restriction or condition is not rationally related to a legitimate government objective or is excessive in relation to that purpose."  *J.H. v. Williamson Cnty.*, 951 F.3d 709, 717 (6th Cir. 2020) (citing *Bell*, 441 U.S. at 535; *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

The CCJ Defendants aver that Plaintiff was administratively segregated for the safety of CCJ inmates and Plaintiff.  Boyd's affidavit states that, following Plaintiff's 14-day administrative segregation, he could not be returned to the medical cell because Plaintiff was previously involved in an altercation with an inmate who was housed in that cell.   That inmate was released in November 2020.  On December 10, 2020, January 14, 2021, and February 8, 2021, Plaintiff made inquiries regarding returning to the medical cell, as the inmate had since been released.  According to Boyd, other inmates in the medical cell did not want Plaintiff to return.   (DN 178-3, PageID.2810-2811).

Boyd goes on to state that on March 4, 2021, Plaintiff was returned to the medical cell.  However, on March 5, 2021, Plaintiff was involved in another fight with an inmate.  Plaintiff was then returned to administrative segregation, and no further attempts were made to place him among other inmates.  The CCJ has only one medical cell for over 700 inmates.  (DN 178-3, PageID.2810-2811).

Plaintiff disputes this version of events.  He attaches statements from two CCJ inmates stating that Plaintiff was not the aggressor in the September 30, 2020, altercation.  (DN 182-9, PageID.2869-2870).  These declarations are unsworn, un-notarized, and not made under penalty

of perjury.  As such, they are insufficient to create a genuine dispute on summary judgment.  *See Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

Plaintiff also refutes that he was involved in a fight with another inmate in the medical cell on March 5, 2021.  Instead, he states the altercation occurred on May 25, 2021, 83 days after he was released to the medical cell.  (DN 182, PageID.2823).  In support thereof, Plaintiff attaches a "Criminal Complaint Information," in which Plaintiff alleged that he was assaulted by an individual named Brandon Gard on May 25, 2021, in the medical block of CCJ.  (DN 182-10).  This document is undated.

Regardless of whether Plaintiff was the aggressor or whether the second fight occurred in May or March of 2021, the CCJ Defendants' rationale remains that Plaintiff was administratively segregated based on a matter of facility safety and security due to Plaintiff's involvement in two altercations with his cellmates.  Plaintiff presents no admissible evidence suggesting that his segregation was disciplinary in nature. *See Martucci*, 944 F.2d  at 294–95 (distinguishing between segregation which is disciplinary, such as "[w]hen a prisoner is subjected to segregated confinement in response to an alleged rule infraction," and segregation for administrative reasons such as "preserving institutional security and insuring [inmates'] presence at trial").  Nor can such an inference be raised where CCJ officials attempted to return Plaintiff to the medical cell at one point once the incompatible cellmate had been released.  Plaintiff asserts, in conclusory fashion, that "their reasoning is pretext[ual] for their discriminatory conduct[.]"  This is insufficient to create a triable issue of fact on the issue of whether his continued segregation was rationally related to a legitimate government objective or is excessive in relation to that purpose.  Neither "conclusory allegations" nor "speculation" nor "unsubstantiated assertions" will suffice to defeat a motion for summary judgment. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017).

Plaintiff having failed to establish a Fourteenth Amendment violation; summary judgment is appropriate in favor of the CCJ Defendants.[13]

### D.

The Court turns to Plaintiff's deliberate indifference claim against Christian County. Plaintiff alleges that Christian County has adopted an unofficial policy of "confiscating inmates' bedding as a form of unconstitutional punishment[.]"   (DN 1, PageID.10; DN 182-1, PageID.2838).

The CCJ Defendants argue that Plaintiff's Fourteenth Amendment claim against Christian County is barred by the doctrine of sovereign immunity.  (DN 178-1, PageID.2802).

"The Eleventh Amendment and background principles of sovereignty ordinarily bar lawsuits against States and state officials."  *See Alden v. Maine*, 527 U.S. 706, 712-14 (1999). Thus, "the doctrine of sovereign immunity protects States, not state subdivision such as counties." *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 994 (6th Cir. 2019). For this reason, the CCJ Defendants' argument that this action is barred by sovereign immunity fails.

The CCJ Defendants also argue that Plaintiff has failed to allege that Christian County had a policy or custom which caused a constitutional violation as required by *Monell*, 436 U.S. at 691. (DN 178-1, PageID.2802-2803).[14]

"To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's constitutional rights."  *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 573 (6th Cir. 2016) (citing *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501

---

[13] In light of this determination, the Court need not reach the CCJ Defendants' argument that they are entitled to qualified immunity.

[14] Plaintiff's failure to train claim has previously been dismissed.  (DN 169).

F.3d 592, 606–07 (6th Cir. 2007); *Monell*, 436 U.S. at 694).  The plaintiff must first "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997) (quoting *Monell*, 436 U.S. at 694).  Where the plaintiff cites an unofficial policy on behalf of the municipality, he must show that, while the policy was never "formally approved by an appropriate decisionmaker," it was nevertheless "so widespread as to have the force of law." *Id*. at 404 (citing *Monell*, 436 U.S. at 690-91).

To that end, Plaintiff must show "the existence of a clear and persistent pattern of illegal activity." *Thomas v. City of Chatanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Doe v. Cnty. of Claiborne*, 103 F.3d 495, 508 (6th Cir. 1996)). To establish a clear pattern, he must show more than "one instance of potential misconduct." *See id*. at 433-434 (rejecting "persistent pattern" argument because plaintiff "did not reach beyond the facts of [plaintiff's] case to show any possibility of a pattern"); *Winkler v. Madison Cnty*., 893 F.3d 877, 902 (6th Cir. 2018) (same).

As to Plaintiff's claim to the existence of an unconstitutional unofficial policy, the CCJ Defendants admit to an unwritten policy of removing bedding from disciplinary segregation cells during ordinary waking hours (6:00 a.m. to 10:00 p.m.).   (DN 178-3, PageID.2808-2809). Plaintiff's dispute regarding whether his bedding was removed 24 hours per day for the full 14-day period he spent in segregation pertains only to himself; he does not allege that other inmates were subject to the 24-hour bedding-removal policy.  Because he has not established that other inmates were subject to a similar deprivation, his unofficial policy claim must fail.  *See Nelson v. Corr. Corp. of Am*., No. 1:13 CV 2615, 2016 WL 1060308, at *9 (N.D. Ohio Mar. 14, 2016) ("There is no evidence to establish a pattern of similar violations over time from which a jury might reasonably infer that the alleged failures were more than isolated events or that they were so 'persistent and widespread' so as to constitute official policies of [the defendant].");  *see also*,

*e.g.*, *Savoie v. Oliver*, No. 2:23-CV-11357, 2024 WL 1758263, at *4 (E.D. Mich. Apr. 24, 2024) (granting motion to dismiss where plaintiff did not allege "that the delays in his medical care were part of a widespread, ongoing issue affecting other prisoners.").

In any event, a municipality cannot be held liable absent an underlying constitutional violation. *Monell*, 436 U.S. at 694; *Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. 2020). As discussed earlier, Plaintiff's Fourteenth Amendment claims fail as a matter of law because he has not shown that the CCJ Defendants acted with deliberate indifference to a substantial risk of serious harm.

The Court finds that the CCJ Defendants are entitled to summary judgment on the *Monell* claim asserted against Christian County.

**E.**

Finally, the Court addresses the CCJ Defendants' argument that Plaintiff has failed to show he was discriminated against on the basis of his disability. (DN 178-1, PageID.2801-2802). Specifically, they argue that the jail official had no reasonable alternative to the removal of Plaintiff's cane, which was done "due to his aggressive conduct," and for the protection of Plaintiff, staff, and other inmates, and not due to his disability. (*Id.*, PageID.2802).

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008) (quoting 42 U.S.C. § 12132). Section 504 of the Rehabilitation Act establishes that "[n]o otherwise qualified individual with a disability in the United States . . .  shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The Sixth Circuit has observed that, "[g]iven the statutes' similar requirements, courts generally evaluate ADA and RA claims together." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). Thus,

> To prevail under either statute, a plaintiff must establish that (1) he has a qualifying disability, (2) he is otherwise qualified for a program, and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability. *S.S. v. E. Ky. Univ*., 532 F.3d [at 453]. On top of that, RA claims—unlike ADA claims—impose an extra causation requirement: the plaintiff must show that the discrimination was "solely" because of his disability. *See Lewis v. Humboldt Acquisition Corp*., 681 F.3d 312, 317 (6th Cir. 2012) (en banc)[.]

*Id.* (other citations omitted). "Plaintiffs may satisfy that final element using two different theories: failure to reasonably accommodate and intentional discrimination." *Id*. (citation omitted).

To prevail under a failure-to-accommodate theory, "a plaintiff must show that the defendant reasonably could have accommodated his disability but refused to do so." *Id.* (citing *Knox Cnty. v. M.Q*., 62 F.4th 978, 1000 (6th Cir. 2023)). "Relatedly, the plaintiff must prove that the failure to accommodate impeded his ability to participate in or benefit from a program or service." *Id.* (citation omitted). The determination of what constitutes a reasonable accommodation is case-specific. *Id.* "Plaintiffs are not entitled to their 'preferred' accommodation; rather, an accommodation suffices if it provides the plaintiff 'meaningful access' to the covered entity's programs or services." *Id.* at 821 (quoting *Bennett v. Hurley Med. Ctr*., 86 F.4th 314, 326 (6th Cir. 2023)).

"To successfully bring an intentional-discrimination claim, a plaintiff must show unfavorable treatment on the basis of his disability." *Id.* at 823 (quoting *Knox Cnty.*, 62 F.4th at

1000).  This inquiry rests upon the defendant's motive: "the plaintiff must prove that his disability caused the defendant's discriminatory behavior—either the 'but-for cause' for ADA claims, or the sole reason for RA claims."  *Id.*  (quoting *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 453 (6th Cir. 2021) (citation omitted)).  On summary judgment, the plaintiff must also show that the defendant acted intentionally—by presenting either direct or indirect evidence of discriminatory intent.  *Id.*

Plaintiff's ADA/RA claims allege that his cane, mattress, and bedding were removed during his 14-day period of disciplinary segregation.  (DN 1, PageID.15-17; DN 182-1, PageID.2854-2856).  The Court assumes, for purposes of this motion, that Plaintiff is a disabled individual based on his partial paralysis.

With respect to Plaintiff's cane, the CCJ Defendants' assert that the cane was confiscated because Plaintiff used his cane to strike another inmate in the face, which resulted in a felony charge and disciplinary segregation for 14 days.  (DN 178-3, PageID.2808).  Plaintiff's cane was not returned to him during his stay at CCJ due to concerns that he would use it as a weapon.  However, Plaintiff was provided a wheelchair whenever he left his cell.  (*Id.*, PageID.2809).  While Plaintiff disputes that he assaulted another inmate with his cane, instead characterizing the incident as "self-defense," Plaintiff does not address, and therefore does not refute, that he was provided a wheelchair in lieu of a cane during his detention at CCJ.  (DN 138, PageID.2345).

The CCJ Defendants do not squarely address the removal of Plaintiff's mattress and bedding in the context of his ADA/RA claim.  (DN 178-1, PageID.2801-2802).  However, Boyd attests that the purpose of removing bedding from disciplinary segregation cells "is to discourage inmates from intentionally violating inmate rules to be placed in a private cell.  Many inmates

desire not to be in a cell with other inmates and prefer a private cell." (DN 178-3, PageID.2809). Plaintiff does not dispute Boyd's proffered rationale.

Under either theory, Plaintiff cannot establish that he was denied any prison service or program as a result of his cane or bedding being confiscated, because he does not allege that not having these items rendered him unable to participate in any prison service or program. *See Messner v. Hickman Cnty.*, No. 1:11-CV-0059, 2013 WL 6181220, at *6 (M.D. Tenn. Nov. 25, 2013), *report and recommendation adopted*, No. 1-11-0059, 2014 WL 28871 (M.D. Tenn. Jan. 2, 2014) (jail officials' refusal of request for a cane did not prevent inmate from fully participating in jail programs and services, i.e., meals and recreational activities); *see also*, *e.g.*, *Gimbrone v. Krisher*, No. 2:12-CV-251, 2013 WL 1438024, at *6 (S.D. Ohio Apr. 9, 2013) (plaintiff failed to plead facts "from which it is plausible to conclude that his cane was confiscated and not replaced due to his disability" and failed to allege that the denial of a cane precluded his participation in prison programs or activities).

Moreover, Plaintiff cannot show causation under a theory of intentional discrimination. There is no genuine dispute that the cane and mattress were removed pursuant to security policies unrelated to Plaintiff's disability. *See Freels v. Cnty. of Tipton*, No. 08-2580-STA, 2010 WL 2364432, at *17 (W.D. Tenn. June 9, 2010), *aff'd sub nom. Freels v. Cnty. of Tipton, Tenn.*, 455 F. App'x 574 (6th Cir. 2011) ("[T]he Court finds that no reasonable juror could conclude that the Plaintiff suffered intentional discrimination due to his disability because the deputies seized his walking cane, a potential weapon.").

Finally, it is undisputed that Plaintiff received a wheelchair while he was not in his cell, thus defeating his claim under a failure-to-accommodate theory. *See Messner*, 2013 WL 6181220, at *6 (jail officials accommodated plaintiff with reasonable alternative to cane, including a low-

lying cot, separate toilet facility, and intercom).  Plaintiff has therefore failed to raise a genuine dispute sufficient to withstand summary judgment.

Accordingly, the Court concludes that the CCJ Defendants are entitled to summary judgment on Plaintiff's ADA/RA claims.

## V.    CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that the motion for summary judgment by the CCJ Defendants (DN 178) is **GRANTED**.  All federal claims against all Defendants are dismissed with prejudice.  The Court will enter a Judgment consistent with this Memorandum Opinion and Order.

Date:    September 18, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
        Counsel of record
4414.015